UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| T.K. A MINOR CHILD BY AND THROUGH HER PARENTS C.K. AND S.T.W.<br>PLAINTIFFS,<br>vs.<br>MERCER ISLAND SCHOOL DISTRICT<br>DEFENDANT | Case No.:<br><br>COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, ATTORNEY'S FEES, AND COSTS<br><br>Note on Motions Calendar: |

## INTRODUCTION

1. T.K. ("Student") is a student with disabilities who attended Mercer Island School District's high school in the contained learning center for a limited amount of time until the beginning of November of 2016. The Student's Parents did not believe she was being appropriately served in that program. Specifically, they believed that she was not receiving the specially designed instruction, supportive services, and the accommodations nor the environment that she needed to make appropriate progress in the school district's program based on her unique needs.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

2. After providing the statutorily-required notice and trying to work with the District to resolve their concerns, the Student's Parents unilaterally placed her part-time in a private school in November of 2016, the private school she had been attending since the previous spring. The Parents' placement was to ensure the Student made a successful transition into a new safe and less sensory-stimulating environment to enable her to progress in her learning. This placement additionally lessened the inappropriate behaviors the school staff were seeing that the Student's Parents and medical team believed were caused by the over-stimulating environment.

3. The Parents filed for a due process hearing in February of 2018 in order to show that the evaluation, the program, and the environment the District had offered was not appropriate.

4. A due process hearing was held before an administrative law judge in June of 2018 with one day of rebuttal testimony taken in July of 2018. The administrative law judge ruled for the school district in a decision dated January 16, 2019. The Parents are appealing that decision.

## JURISDICTION

5. This action arises under the Individuals with Disabilities Education Act, 20 U.S.C. §§1400 *et seq* (IDEA) and the regulations adopted there under.

6. Claims raised in this Complaint also stem from claims of discrimination under 42 USC §12101 Americans with Disabilities Act effective January 1, 2009 and its implementing regulations along with the Rehabilitation Act of 1973 Section 504 and its accompanying regulations. Claims raised are also from the Washington state constitution and Washington state law.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

7. This Court has pendent jurisdiction and supplemental jurisdiction over the state constitutional and legal claims raised pursuant to 28 U.S.C. §1367 as they arise from the same nucleus of facts as the Plaintiff's federal claims.

8. The Plaintiffs are appealing from a final order from an administrative law judge dated January 16, 2019 and as such have exhausted all administrative remedies and may appeal to this Court pursuant to 20 U.S.C. §1415(i)(2) and W.A.C. 392-172A-05115. As the Parents have exhausted their administrative remedies, 20 U.S.C. §1415(l) gives the Parents the right to raise claims under the American's with Disabilities Act and the Rehabilitation Act in this action as well as their state claims.

## VENUE

9. All acts and omissions at issue occurred or failed to occur in the Western District of Washington in King County. As such venue is proper for this Court.

## PARTIES

10. T.K. (hereafter "Student") is a seventeen year old student who resides with her parents in the geographical boundaries of the Mercer Island School District.

11. C.K. (hereafter "Father" or "Parent" or collectively with Mother as "Parents") is the Student's father and he resides in Mercer Island Washington within the geographic boundaries of the Mercer Island School District.

12. S.T.W. (hereafter "Mother" or "Parent" or collectively with Father as "Parents") is the Student's mother and she resides in Mercer Island Washington within the geographic boundaries of the Mercer Island School District.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

13. Defendant Mercer Island School District is a school district in the State of Washington and is fully accredited as a provider of educational services and is thereby responsible for providing appropriate services to qualified special education students pursuant to R.C.W. 28A.155.090 and W.A.C. 392-172-030.

**FACTUAL ALLEGATIONS**

14. Student qualifies for special education services under the category of Multiple Disabilities. The Student was typically developing up until she was one year-old when she sustained a vaccine injury resulting in encephalitis, a brain infection, which caused seizures. Additionally, Student has PCDH19 mutation, moderate intellectual disabilities, Autism Spectrum Disorder, significant deficits in executive functioning, dsypraxia, splintering of cognitive skills, and intractable epilepsy. Student also has an auditory processing disorder, a language-based learning disability, a Developmental Coordination Disorder, significantly impaired expressive language abilities with milder delays in receptive language, and a significant visual tracking disorder with Central/Peripheral Integration.
15. Student was having generalized tonic-clonic seizures at least once per month while she was in elementary school, which significantly disrupted her educational program.
16. Student's generalized tonic-clonic seizures decreased significantly around 2013 due to better medication control, although seizures were still occuring according to a twenty-four hour EEG, and she continued to have abnormal brain wave activity/seizure activity at night during her sleep which likely disrupted her learning and memory.
17. Since the beginning of the Student's first year in middle school in 2014 with her generalized seizures under better control, Student was at a critical juncture for a more intensive educational program in an environment that reduced stress and other environmental factors that triggered exacerbations of her seizure disorder.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

18. Student transitioned from elementary school to Islander Middle School in the district and attended the middle school during the 2013-2014, 2014-2015, and 2015-2016 school years as a special education student.

19. Parents became increasingly concerned when they saw the Student regressing academically, showing aggressive behavior at school, and having absence seizures. Additional, the Student would refuse to attend school, often several days each month.

20. There was an incident December 14, 2014 when the Student was placed in Isolation with a para-professional for twenty minutes after she was allegedly physically aggressive with staff. Student was sent home with a caregiver that day after the Isolation in a very agitated state.

21. Parents were alarmed by the use of Isolation with the Student. Parents were also alarmed that the Student's reactions that day were viewed by the staff as "aggressive" when the staff knew the Student was having medical issues and it was difficult for the Student to explain it to them.

22. After that incident the Parents asked staff at the District's middle school if the school would allow private therapists to come to the school to provide more intensive ABA therapy for the Student. The special education teacher and administration staff at the school said no. Therefore, the Parents pulled the Student out of school part-time to provide her with a quiet home environment some mornings and late afternoons. Parents also wanted to provide the Student with an environment with staff trained in positive behavior techniques and support who would be able to provide close attention and quick intervention for any behaviors she exhibited.

23. In January of 2015 they engaged Seattle Behavior Consulting and Therapy ("SBCT") to provide the Student with individualized Applied Behavior Analysis ("ABA") in a home



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

program with a trained behavior therapist, supervised by a Board Certified Behavior Analyst ("BCBA"), using data-driven interventions to work on academic, adaptive, communication, social, and behavior skills. This program was for fifteen-to-eighteen hours each week. This necessitated the Mother turning down employment so she could be at home with the Student as an adult's presence was required for this home program.

24. Student attended part-time at Islander Middle School for the remainder of that school year. Student continued her previous schedule, attending part-time at Islander Middle School and part-time at home, with individualized instruction with her Parents and ABA services with SBCT.

25. The District conducted a Re-Evaluation in October of 2015 and completed an IEP in November of 2015. While the Student was "part-time" at Islander Middle School, she attended the majority of the day there, only missing morning activities three times a week.

26. In the home program, Parents were seeing improvements in the Student's behaviors, academic and adaptive skills, and communication. They were hearing a different story from the school. The Parents were concerned the Student's academic gap was widening which made her inclusion in general education classes more difficult.

27. Parents thought the Student was attending PE, Choir, Computers, Art, and Marine Biology only to later find out the school staff was not sending the Student to those classes most days because the Student was over-stimulated due to a sensory-overload caused by noisy enviornments, multiple transitions, and multiple settings. The school staff failed to consider if there were acommodations and/or modifications that could have been made in order to make these general education classes more successful for the Student. Instead, they just stopped sending her and kept her in the self-contained special educaiton classroom. The inconsistency of the Student's attendance in the general education classes created more



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

difficulties when she did attend. This resulted in the Student being kept in the self-contained classroom most of the time, rather than the school staff informing the Parents of the problems and working towards solutions that would allow her more inclusion.

28. It was at this point the Student was showing distress at home when it came time to go to school, often refusing to go. This was new to the Parents and they tried to find out what was going on at school to cause the Student's distress. They were unable to get the information they needed to figure this out.

29. Parents asked for more information about the Student's time at school as well as work samples and data on what the Student was doing at school but they received little information and only a small amount of data or work samples from the teachers. Parents asked for data on her goals and her behavior every year when they received progress reporting on goals as well as at the review of her IEP. This happened consistently for the 2013-2014, 2014-2015, and 2015-1016 school years. Without sufficient information, work samples, and data for the Student, the Parents were unable to know what the Student was working on, what kind of progress she was making, or why the teachers were reporting she was not making progress. They were also unable to figure out why the Student was so distressed.

30. This lack of data denied the Parents their ability to fully participate in the IEP meetings and understand if the goals the IEP team was proposing were appropriate. While they sat in the meetings, they were stymied on how to participate as they lack the information the teachers had reviewed in their preparation and drafting of the IEP.

31. What the Parents ended up surmising was the program at Islander Middle School was over-stimulating for the Student and she was unable to function in that environment. The Parents later learned from the Student's medical providers and Dr. Uherek that an over-stimulating



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

environment likely caused all the behavioral problems and lack of progress they saw at the middle school. Dr. Uherek also concluded the over-stimulating environment in the high school would impede her learning and lead to a continuation of behavior problems.

32. In May of 2016 an IEP Amendment was written by the school staff to add new adaptive goals and a new reading goal as the Student had met the previous goals. The Student's time in special education was increased with a decrease in her time in general education. The Parents did not believe this IEP program was appropriate for the Student.

33. On August 6, 2016 the Parents asked the District to place the Student at Yellow Wood Academy, or a similar private school, at District expense, as her IEP placement for the 2016-2017 school year. The District denied their request.

34. For the first part of the 2016-2017 school year, Parents enrolled the Student part-time at the Mercer Island High School and part-time at a private school, Yellow Wood Academy, as well as continuing the private ABA services with Seattle Behavior Consulting and Therapy (SBCT). The Student attended the high school on Friday mornings for three hours only. The Student had ABA services with SBCT in her home in the morning on Mondays, Tuesdays, and Thursdays, for three-hour sessions each morning.

35. The Student attended Yellow Wood Academy in the afternoons on Mondays, Tuesdays, Thursdays, and Fridays for three-hour sessions each day. At Yellow Wood Academy the Student worked on geography, science, reading/writing/grammar and music. The Student consistently enjoyed going to Yellowwood and seemed to do well in the individualized program there. The Student attended a home-school community program on Wednesday mornings where she was with more typical peers in a less-stressful environment.

36. The District conducted another Re-Evaluation in October of 2016 in response to the Parents request to place the Student at a private school at the District's expense, even though a full



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

evaluation had been done in October of 2015. The District then wrote an IEP in November of 2016 denying the Parents' request for a private placement, offering instead placement at the high school with the same basic IEP program as previously.

37. The Parents disagreed with both the October 2016 Re-Evaluation and the proposed November 2016 IEP.

38. The Student stopped attending the high school in November of 2016 as the program there did not meet her needs. The high school program was over-stimulating for the Student and not appropriate, so the Parents discontinued it. The Student continued at Yellow Wood Academy and with her home ABA program through SBCT.

39. Based on their disagreement with the Re-Evaluation, on November 9, 2016 the Parents requested an Independent Educational Evaluation at District expense. At the IEP meeting on November 15, 2016, the Parents repeated their request for an IEE and requested the IEE be conducted by Dr. Ann Uherek, a private clinical psychologist, experienced with students with disabilities similar to the Student's disabilities.

40. At the November 15th IEP meeting, the District agreed to fund the IEE with Dr. Uherek and then wrote an IEP which was to start on November 17, 2016 placing the Student full-time at Mercer Island High School in the same program the Student had been in since her years at Islander Middle School. There were no substantive changes to her program in this IEP. While the Parents signed that they were in attendance at the meeting, they were clear they did not agree with the IEP.

41. In April of 2017 the Parents decided to start the Student at Dolan Academy to see how that more data-based program would work for the Student. The Student responded well to the program at Dolan Academy and the Parents gradually transitioned the Student to the Dolan program that spring and the summer of 2017.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

42. Dr. Uherek conducted a comprehensive evaluation of the Student starting in October of 2016, with a completed report to the District April 3, 2017. There was a meeting with the District to discuss Dr. Uherek's evaluation and recommendations on May 16, 2017. At that meeting the District decided it had to conduct a Re-Evaluation of "its own" and the District retained Dr. David Breiger to conduct this Re-Evaluation.

43. The Parents signed all the necessary releases and permission forms, even though they disagreed with the need to re-administer more testing to the Student after she completed a comprehensive evaluation with Dr. Uherek. Despite disagreeing, the cooperated with the evaluation proposed by the District.

44. The District also retained Dr. Kathleen Prosch-Jensen to conduct a behavioral assessment and to review behavioral data from all the providers who worked with the Student. As part of this Re-Evaluation, the Parents provided Dr. Prosch-Jensen with all of SBCT's behavioral data since the Student begin with SBCT in January of 2015. The Parents signed release forms allowing Dr. Uherek to provide Dr. Breiger with any information he needed about the evaluation she conducted with the Student.

45. The Parents provided the school team with extensive medical information and recommendations from all of the Student's medical providers: Dr. Brien Vlcek, Dr. Sotero de Menezes, and Dr. Kinney. The Parents provided the team with detailed educational information on the Student's program and progress at the Dolan Academy and Yellow Wood Academy. Along with Dr. Uherek, all of the Student's medical providers recommended a quiet, focused, individualized educational program like the one at Dolan Academy for the Student due to her complex disabilities, which includeed her seizure disorder, her visual, functional disabilities, and her complex and specific learning needs as well detailed by Dr. Uherek. All of the Student's providers were clear on how the Student's



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

various disabilities necessitated this setting and how the Student was in a critical learning window due to the decrease in her seizure activity.

46. During the summer of 2017 the Student attended Yellow Wood Academy for three-hour sessions on Tuesdays and Thursdays for six weeks. The Student also attended Dolan Academy for three-hour sessions on Mondays, Wednesdays, and Fridays for six weeks as the Dolan staff started to transition the Student's academic program from Yellow Wood to their school.

47. For the 2017-2018 school year, the Student began to attend Dolan Academy on a fuller schedule focusing on a more rigorous academic program, individualized for her. The Student attended Dolan Academy for eight hours each week: on Mondays for three hours, on Wednesdays for two hours, and on Fridays for two or three hours. The Parents had the Student on a more limited schedule at the Dolan Academy due to both finances and the difficulty with transportation. The Student did not receive speech and language services she needed also due to financial reasons and instead language skills were included into her ABA program.

48. In September of 2017 the Mother met with Dr. Prosch-Jensen as part of Dr. Prosch-Jensen's evaluation. It was at that meeting the Mother saw the District had provided Dr. Prosch-Jensen with detailed data on the Student's progress on her goals from school years back to 2013. This was the data Mother had been asking the District for years back. The Mother asked for copies, received those copies, and in her review, she was able to see the Student was not making the progress the District had been reporting at IEP meetings.

49. The District had thirty-five school days to complete its additional evaluation, which should have been completed by September 20, 2017. The team did not meet until October 11, 2017 to discuss the District's Re-Evaluation report.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

50. Dr. Uherek conducted an Independent Educational Evaluation ("IEE") at the District's expense. Dr. Uherek presented her report, conclusions, and recommendations to the IEP team. The District's report along with its experts ignored Dr. Uherek's testing data and recommendations and refused to include her scores, conclusions, and recommendations in the Re-Evaluation Report even though the Re-Evaluation Report then became the Present Levels of Functioning for the Student on the subsequent IEP and was used to determine her IEP goals, services, enviornment, and placement.

51. Dr. Breiger conducted an evaluation which consisted of his review of Dr. Uherek's evaluation, Dr. Vlcek's recommendations, and a limited amount of new testing. Dr. Breiger then ignored the recommendations of the experts who worked with the Student and knew her best. Dr. Breiger concluded that the school district's proposed program was appropriate despite all the evidence that countradicted his opinion.

52. Dr. Prosch-Jensen conducted a detailed review of data provided by the District and the Parents and she observed the Student for a limited amount of time in her various settings. Dr. Prosch-Jensen made detailed recommendations as to what program would work best for the Student. In general the Parents agree with Dr. Prosch-Jensen's programming recommendations. Dr. Prosch-Jensen concluded that the Student was not actually learning, but "memorizing", discounting the role memorization of information plays in learning, a conclusion the Parents and the Student's teachers disagreed with. Dr. Prosch-Jensen then concluded the program she was recommending would be able to be implemented in the District's proposed setting. Dr. Prosch-Jensen did not explain how that conclusion reconciled the concerns and recommendations from Dr. Uherek and the Student's medical team to the contrary.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

53. The District ignored the recommendations of the Student's medical team and refused to include those conclusions and recommendations in the Re-Evaluation Report.

54. The District ignored the reporting from the Dolan teaching staff on what the Student was able to do educationally and refused to include the Student's academic information from Dolan and that staffs' recommendations in the Re-Evaluation Report. The District's experts concluded, without any evidence, that the Student's progress at Dolan Academy was not actual progress, ignoring the data presented that showed otherwise.

55. The District based all of its conclusions and recommendations on Dr. Breiger's opinions, Dr. Prosch-Jensen's opinions, and the opinions of school staff who had not seen the Student in about one year. The Parents stated several times at the meeting they disagreed with the District's conclusions and subsequently wrote a Dissenting Opinion to the District's Re-Evaluation.

56. The Parents wanted the Student to receive a full day of educational services with the needed speech and language services at Dolan Academy and would have accessed those services for the Student if they could. The Parents and the Dolan staff believe the Student would greatly benefit from a fuller day of services with speech and language services included. The Student continued her home ABA program that included academics with SBCT staff. If the Student was in a full school day, the services with SBCT could have focused solely on adaptive skills rather than supplementing with educational skills as they were doing.

57. The District completed their Re-Evaluation after the October 11, 2017 meeting with a final report at the IEP meeting on November 15, 2017. The District held two IEP meetings, one on November 15th and one on November 29th. The District presented the Parents with an IEP at those meeting, denying their request for placement at Dolan Academy and offering a full day placement at Mercer Island High School.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

58. The Parents did not agree with the IEP that was offered to take place at Mercer Island High School and they did not believe the District's IEP addressed the progress the Student was making at Dolan Academy and with her ABA program due to those programs following the recommendations of Dr. Uherek and the Student's medical providers. The Parents disagreed with the goals and with the matrix of service minutes along with the multiple settings and multiple transitions the District was proposing the Student be in each day. The proposed IEP did not address the concerns of Dr. Uherek and Dr. Vlcek that over-stimulating enviornments with too many transitions not only created a barrier to the Student's learning but created a risk for increased seizure activity.

59. Along with the IEP, the Student required a Health Plan/Emergency Care Plan due to her seizures and the need for all staff working with the Student to have clear medical directives on how to appropriately supervise the Student in classes and during transportation and then how to respond depending on the type of seizure occurring, how long the seizure continued, and then whether there was a single seizure or multiple seizures.

60. The Student's private neurologist, Dr. Vlcek, recommended a Health Care Plan for the Student based on his medical opinion on how to appropriately respond to the Student based on the factors as stated above. The District did not have or consult with a neurologist on this but instead took the information from the Student's neurologist.

61. The District's school nurse reviewed what Dr. Vlcek sent and then she wrote a Health Plan/Emergency Care Plan. In writing that Plan she did not follow the Student's doctor's recommendations, did not teamed with the Student's other doctors, and did not team with the Parents to write a plan that fit the Student's individual medical needs. This not only denied the Student a FAPE as it impacted her ability to access her education, it was medically dangerous for her if the doctor's prescriptions were not properly followed.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

62. A due process hearing was held before an administrative law judge in June of 2018. Rebuttal testimony was taken in July of 2018.

63. The due process hearing's record closed on July 30, 2018 with the submission of closing briefing from both parties. The decision from the administrative law judge was due on August 29, 2018. The administrative law judge granted himself several delays *sua sponte*. The final decision was dated January 16, 2019.

64. The Parents disagree with the administrative law judge's decision in that they do not believe it was based on the evidence and/or testimony in the record. The Parents further believe the decision of the administrative law judge did not follow the IDEA or the interpretive caselaw. As such the Parents are appealing the decision and including in their appeal issues the administrative law judge dismissed for lack of jurisdiction.

65. In summary, after three school district evaluations, one Independent Educational Evaluation. three doctorate-level psychologists, two of the Student's neurologists, trained behavior therapists, multiple educators, multiple IEP meetings, and then a due process hearing that took eleven months from filing to conclude with a decision, the Parents are left with trying to fund an appropriate program for their disabled daughter on their own. The Parents are turning to this Court for a decision that affords their daughter the education that will provide her with the academic, adaptive, and language skills she needs to be a functional member of society.

## CLAIMS FOR RELIEF

## I. <u>Denial of Special Education Rights Under Federal and State Law</u>

66. The factual allegations set forth in paragraphs 14 through 65 above are hereby alleged and incorporated by reference.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

67. The Individuals with Disabilities Education Act (IDEA), 20 U.S.J. §1400 *et seq*, requires that school districts provide students with a free, appropriate, public education including special education and related services.

68. Washington state law requires school districts within the state provide to all eligible students between the age of three and twenty-one, within their boundaries, a free, appropriate, public education. W.A.C. 392-172-030. A school district in the state of Washington has an obligation to provide appropriate educational services to meet the needs of a student who has a disability separate and apart from its obligation to provide a free appropriate public education under federal law. W.A.C. 392-172-020(2).

69. Mercer Island School District through its administrators, agents, and employees, violated state and federal law by not providing Student with a Free Appropriate Public Education for the 2015-2016 school year starting February 27, 2016, the 2016-2017 school year, and the 2017-2018 school year, as well as the school years through this Court's final decision.

70. Mercer Island School District through its administrators, agents, and employees, violated state and federal law by not providing Parents their rights to fully participate in their child's education and thereby denied the Student a Free Appropriate Public Education for the time period of the 2015-2016 school year starting February 27, 2016, the 2016-2017 school year, and the 2017-2018 school year, as well as the school years through this Court's final decision.

## II. VIOLATION OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. §12101, *et. seq.* and SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. §794 *et. seq.*



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

71. The factual allegations set forth in paragraphs 14 through 65 above are hereby alleged and incorporated by reference.

72. Mercer Island School District, through its administrators, agents, and employees, failed to provide related aids and needed services and supports for the Student to be able to participate appropriately in any regular education program and therefore is in violation of the Americans With Disabilities Act, 42 U.S.C. §12101 *et. seq.* (ADA) and its implementing regulations and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 *et. seq.* (Rehabilitation Act) and its implementing regulations for the 2015-2016 school year starting February 27, 2016, the 2016-2017 school year, and the 2017-2018 school year, as well as the school years through this Court's final decision.

73. Mercer Island School District, through its administrators, agents, and employees, excluded the Student solely on the basis of her disability from participation in and denied to the Student the benefits of the services, programs, and activities at the public school to which she was qualified for in violation of the American's with Disabilities Act, 42 U.S.C. §12132 for the time period of the 2015-2016 school year starting February 27, 2016, the 2016-2017 school year, and the 2017-2018 school year, as well as the school years through this Court's final decision..

74. By denying the Student nondiscriminatory access to her education for the time period of the 2015-2016 school year starting February 27, 2016, the 2016-2017 school year, and the 2017-2018 school year, as well as the school years through this Court's final decision, the Student has been and currently is denied her rights as a disabled person under 42 USC §12101 Americans with Disabilities Act effective January 1, 2009 and its implementing regulations along with the Rehabilitation Act of 1973 Section 504 and its accompanying regulations.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

75. By not providing related aids and needed services for the Student to participate appropriately in any regular education program, the Student was denied nondiscriminatory access to her education and by doing so the Mercer Island School District failed to provide the Student a free, appropriate, public education (FAPE) within the meaning of Section 504 and its implementing regulations for the time period of the 2015-2016 school year starting February 27, 2016, the 2016-2017 school year, and the 2017-2018 school year, as well as the school years through this Court's final decision.

## III. VIOLATION OF WASHINGTON STATE CONSTITUTIONAL RIGHTS AND RIGHTS UNDER STATE LAW EFFECTUATING CONSTITUTIONAL RIGHTS

76. The factual allegations set forth in paragraphs 14 through 65 above are hereby alleged and incorporated by reference.

77. The Student as a child of citizens of the state of Washington and residing within the state borders, had a constitutional right to an appropriate education that did not discriminate based on her disability.

78. The Mercer Island School District , through its administrators, agents, and employees, failed to provide the Student with an appropriate education based on her disabilities and therefore it is in violation of the Washington State Constitution Article IX §1 providing for access to an education for all students living in the state of Washington for the time period of the 2015-2016 school year starting February 27, 2016, the 2016-2017 school year, and the 2017-2018 school year, as well as the school years through this Court's final decision.

79. By denying the Student her right to a basic education under the Washington State constitution, the Mercer Island School District , through its administrators, agents, and employees, violated state law R.C.W. 28A.150 for the time period of the 2015-2016 school



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

year starting February 27, 2016, the 2016-2017 school year, and the 2017-2018 school year, as well as the school years through this Court's final decision.

80. By denying the Student her right to an appropriate special education program due to her status as a student with a disability, the Mercer Island School District , through its administrators, agents, and employees, violated Washington state laws R.C.W. 28A.155 *et. seq.* and R.C.W. 49.60 *et. seq.* for the time period of the 2015-2016 school year starting February 27, 2016, the 2016-2017 school year, and the 2017-2018 school year, as well as the school years through this Court's final decision.

**Prayer for Relief**

**WHEREFORE**, based on the denials and violations enumerated above, the Plaintiffs on behalf of their disabled daughter seek the following relief:

1. That the Court take and retain jurisdiction over this matter until all orders are completed.
2. That the Court declare that the Defendant violated the procedural and substantive provisions of the IDEA under state and federal law and failed to provide the Student with a free, appropriate, public education (FAPE) starting February 27, 2016 through the remainder of that 2015-2016 school year, for the 2016-2017 school year, the 2017-2018 school year, the 2018-2019 school year, as well as the school years through this Court's final decision.
3. That the Court declare that the Defendant violated the American's with Disabilities Act and The Rehabilitation Act when it failed to provide the Student non-discriminatory access to her education and failed to provide the Student a free, appropriate, public education under the meaning of both Acts.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

4. That the Court declare that the Defendant violated the Student's rights under the Washington state constitution and state law and by doing so, denied the Student her right to an appropriate, non-discriminatory education starting February 27, 2016 through the remainder of that 2015-2016 school year, for the 2016-2017 school year, the 2017-2018 school year, the 2018-2019 school year, as well as the school years through this Court's final decision.
5. Based on these denials and violations, a finding by the Court that the appropriate program for Student for the 2018-2019 school year was a placement at Dolan Learning Center, a private school, with appropriate special education and related services as recommended by Dr. Prosch-Jensen including speech and language services as recommended by Ms. Bucknum and therefore should be the IDEA placement for the Student and order the District to write an IEP and fund that program for the 2018-2019 school year and the school years after the Court's decision.
6. Based on these denials and violations, the Court order the Defendant to reimburse the Parents' expenses for tuition, transportation, and related costs for Student's attendance at Yellow Wood Academy, Dolan Academy, and their co-payments/deductible payments to Seattle Behavioral Consulting and Therapy from February 27, 2016 to the date of the Court's decision, for the time period of the 2015-2016 school year starting February 27, 2016, the 2016-2017 school year, and the 2017-2018 school year, as well as the school years through this Court's final decision.
7. Based on these denials and violations, the Court order the Defendant to provide compensatory speech and language services to the Student in the amount lost from the 2018-2019 school year to the Court's decision.



Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
2223 112th Avenue NE Suite 202
Bellevue, Washington 98004
206-542-7234

8. Based on these denials and violations, the Court order the Defendant to conduct an IEP meeting within 30 days to include the Parents, teachers and administrators from Dolan Academy, the BCBA and RBT from SBTC, and appropriate District staff as IEP members.
9. Based on these denials and violations, the Court order the Defendant to provide compensatory education to the Student during the 2022-2023 school year due to her loss of educational opportunity from August of 2016, when the Parents first asked for a private placement.
10. Based on these denials and violations, the Court determine the Plaintiffs to be prevailing parties to this action and the underlying due process hearing and order reimbursement of all attorney's fees and costs related to pursuing both actions.
11. Any and all other relief as the Court may deem just and equitable.

Dated this 12th day of April, 2019

/s/Jeannette A. Cohen
Jeannette A. Cohen M.Ed. J.D.
Attorney at Law
WSBA # 33052
2223 112th Ave NE Suite 202
Bellevue, Washington 98177
206-542-7234