UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T.K., a minor child, by and through her parents, C.K. and S.T.W.,<br><br>Plaintiffs,<br><br>v.<br><br>MERCER ISLAND SCHOOL DISTRICT,<br><br>Defendant. | CASE NO. C19-556 MJP<br><br>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND APPEAL FROM ADMINISTRATIVE DECISION |

The above-entitled Court, having received and reviewed:

1. Plaintiffs' Motion for Summary Judgment and Appeal of Administrative Decision (Dkt. No. 17);

2. Defendant Mercer Island School District's Opposition and Cross-Motion for Summary Judgment (Dkt. No. 18);

3. Plaintiff's Reply to Opening Memorandum and Motion for Summary Judgment (Dkt. No. 19);

4. Defendant Mercer Island School District's Reply in Support of Cross-Motion for Summary Judgment (Dkt. No. 20);

and all attached declarations and exhibits (i.e., the Administrative Record on file in this matter), rules as follows:

IT IS ORDERED that Plaintiffs' motion for summary judgment and their appeal from the administrative decision below are DENIED.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment is GRANTED; the Court affirms the ALJ's finding that a FAPE was offered to Student and Parents were granted meaningful participation in the process; and (2) enters summary judgment of dismissal regarding Parents' independent claims under the ADA, § 504 of the Rehabilitation Act, the Washington Constitution, and the Revised Code of Washington.

## **Background**[1]

Student, who has diagnoses of intractable epilepsy, encephalopathy, autism spectrum disorder, dyspraxia and mild to moderate intellectual disability, is eligible for special education services and has been receiving those services through an Individual Education Plan ("IEP") since elementary school. AR 1763-64, 1768.

Beginning in 6th grade, Student began attending Island Middle School ("IMS") in the District's Personalized Learning Program ("PLP"). AR 747, 1327-28. Her case manager was Julianne Riccio, a Board Certified Behavior Analyst ("BCBA"). During her 6th grade year, Student's Parents chose to have her attend school part-time while remaining home two days a week for an in-home Applied Behavioral Analysis ("ABA") program (AR 763-64, 2342-43), a

---

[1] Throughout the briefing and the ALJ's findings and conclusions, the minor T.K. is referred to as "Student" and the parents as "Parents" or "Mother" or "Father." The Court will continue that convention for the sake of consistency.

particularized skill-building methodology for children with autism. AR 237-48. Student's IEP progress reports were regularly generated and sent to Parents. AR 757, 2431-42.

Student continued on this part-time schedule in 7th and 8th grade (2014-16; AR 1272). Her 8th grade PLP teacher was Ms. Olafsson. AR 746. The annual IEP review for 8th grade was held during November 2015; Parents met with Ms. Olafsson and Ms. Riccio (AR 775, 809-10) and no objections were raised to Student's levels of performance or her goals at that time. AR 810-11. Student was in two general education classes (PE and Choir or Marine Biology; AR 2172-73), attended the majority of them (AR 817-18, 2175-78) and Parents raised no concerns about the frequency of attendance. AR 1153-54. The November 2015 IEP was amended in April 2016 (AR 1832-65); again, no objections to Student's levels of performance or the amended goals were voiced at that time. AR 812, 1851-52.

Following completion of 8th grade, Parents met with Defendant's Director of Special Education, Dr. Myatich, and requested a change in placement to Yellow Wood Academy, a private school for disabled students. AR 1333-34, 2182. The District responded by proposing a reevaluation to see if a change in placement was warranted. AR 1327, 1870-72. Thereafter, Student began attending Mercer Island High School ("MIHS") only one day a week for three hours to take part in the reevaluation. AR 41, 2193, 2354. Although this obviously gave the MIHS team very limited access to Student, the reevaluation was completed on October 18, 2016, using her present levels of performance at MIHS supplemented by information from Parents regarding Student's in-home ABA program, information from Yellow Wood Academy, and a review of prior District evaluation data. AR 1875-1906.

A meeting was held on November 15, 2016 with Parents and the IEP team (Parents had also participated in a "pre-meeting" with Student's special education teacher from the District,

Ms. Kenyon; AR 1299-1300, 1953, 2361-64); with the exception of the director of Yellow Wood (Mr. Miley), Parents requested no one else to attend the meeting. No objection was raised at the meeting to Student's present levels of performance or the IEP goals. AR 1302-03. The IEP team declined Parents' request for a Yellow Wood placement and offered Student a program with full-time placement at MIHS. AR 1953.

Parents continued to withhold Student from any of the offered IEP services, instead requesting an Independent Educational Evaluation ("IEE") by Dr. Uherek, which the District granted. AR 2359-60, 1957-58, 1335. The District received Dr. Uherek's report on April 17, 2017 (AR 1387, 545, 2210-11, 1962-81, 1201-02) and convened a meeting to review the report in May 2017. AR 1200, 1336.

Although Dr. Uherek's report did not recommend a private school placement, Dr. Uherek verbally recommended such a placement at the May meeting.[2] AR 1336-37. Because of the divergence between the District's recommendation and Dr. Uherek's, the District undertook a reevaluation of Student (AR 1959-61), contracting with Dr. Breiger (a neuropsychologist) and Dr. Prosch-Jensen (a BCBA and mental health counselor) for the reevaluation. AR 1337-38, 2258-70. Dr. Prosch-Jensen observed Student at Yellow Wood and during in-home ABA sessions in June 2017; Dr. Breiger's team assessed Student at Children's Hospital in August 2017. AR 1982-89, 2225-36. Parents continued to deny Student access to the District's program at MIHS (AR 1195, 2208-09) and at some point between the spring and summer of 2017, Student began attending Dolan Academy exclusively. AR 143, 1204.

---

[2] It was at the May 2017 meeting that Parents advised the District that Student was then attending both Yellow Wood and Dolan Academy, another private school in Woodinville, Washington.

The IEP team met with Parents to review the results of the reevaluation on October 11, 2017; Dr. Uherek accompanied Parents, Dr. Prosch-Jensen was present and Dr. Breiger appeared by phone. The reports of the District's experts were reviewed, as were Dr. Uherek's written IEE findings. AR 1983-87, 2063, 2065, 2083-85. Dr. Uherek testified that she agreed with Dr. Breiger's and Prosch-Jensen's service recommendations. AR 489-94. No discussion was had or decision made regarding placement at this October 2017 meeting.

On November 15 and 29, 2017, the IEP team, Parents, and the founder (Ms. Dolan) and principal (Ms. Mott) of the Dolan Academy met to consider a new IEP. AR 616, 1348, 2088, 2162. No objection was interposed concerning Student's present levels of performance. AR 1266-67, 1352. Three new academic goals were added based on input from the Dolan representatives. AR 637, 1028, 2126. At the conclusion of the meetings, the IEP team rejected a placement at Dolan and recommended a placement at MIHS in the PLP classroom. AR 1354-55, 2123-24, 2126.

In response, Parents filed a hearing request seeking adjudication of the dispute by an Administrative Law Judge ("ALJ"). A seven-day evidentiary hearing was held, resulting in the publication of Findings of Fact and Conclusions of Law ("FoF/CoL" or "F/F" and "C/L") and an order by the ALJ on January 16, 2019. AR 1479-1510. The ALJ found that Parents had not met their burden of proving the November 2016 IEP was inappropriate (AR 1505, C/L 11-13), that the October 2017 Reevaluation denied Student a free and appropriate public education ("FAPE;" AR 1506-07, C/L 14-21), or that the November 2017 IEP was inappropriate. AR 1508-09, C/L 22-25. The FoF/CoL further concluded that there had been no denial to Parents of a meaningful opportunity to participate in the development of Students IEP by failure to provide goal progress

reports until October 2017, or by failure to provide Parents with the raw data underlying the progress reports. AR 1481-82, C/L 21.

On April 12, 2019, Parents filed this action, seeking not only judicial review of the ALJ's findings but also alleging disability discrimination claims under § 504 of the Rehabilitation Act and the ADA, as well as Washington constitutional and statutory claims. Before the Court now are the administrative appeal and the cross-motions for summary judgment on these claims which will determine the merits of the case.

## Discussion

Standard of review // Legal standards

*Generally*

The burden of proof rests with Parents on their appeal of the ALJ's order. L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 910 (9th Cir. 2009). The Court applies a version of a preponderance of the evidence standard which involves giving "due weight" to the ALJ's findings, with the discretion to "accept or reject findings in part or in whole" considering the ALJ's administrative expertise and resolution of each material issue. Ms. S. ex rel. G. v. Vashon Isl. Sch. Dist., 337 F.3d 1115, 1126 n. 16 (9th Cir. 2003). Legal conclusions are reviewed *de novo*. Id. at 1127.

Particular deference is to be accorded findings that are "thorough and careful." Union Sch. Dist. v. Smith, 15 F.3d 1519, 1525 (9th Cir. 1994); *see also* R.B. v. Napa Valley Unified Sch. Dist., 496 F.3d 932, 942 (9th Cir. 2007)(findings are thorough and careful "when the officer participates in the questioning of witnesses and writes a decision containing a complete factual background as well as a discrete analysis supporting the ultimate conclusions"). Defendant points out that the ALJ here was actively involved in cross-examination of witnesses and

building an adequate record,[3] and that his FoF/CoL contains 138 findings of fact and 31 conclusions of law. The record also reflects both the ALJ's weighing of the evidence and articulation of his reasons for according more or less weight to some of the evidence and testimony.[4] The Court agrees with the Defendant that the ALJ's findings are entitled to particular deference based on their thoroughness and carefulness.

The Parents' remaining claims – discrimination under § 504, the ADA, and the Washington Constitution and RCWs – are reviewed under the customary summary judgment standard. The moving party is entitled to summary judgment if that party "shows that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." FRCP 56(a).

*Free and Appropriate Public Education ("FAPE")*

The Supreme Court has declared that, in order '[t]o meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." Endrew F. v. Douglas Cty. Sch. Dist., 137 S.Ct. 988, 999 (2017). The goal of the IDEA is not to provide "the best possible" IEP for a student or to permit the student to achieve maximum potential:

> An "appropriate" public education does not mean the absolutely best or "potential-maximizing" education for the individual child…The states are obliged to provide "a basic floor of opportunity" through a program "individually designed to provide educational benefit to the handicapped child."

---

[3] *See* AR 215, 278-88 (questioning of Kakach), AR 354-57 (questioning of Funk), AR 629-39 (questioning of Mott).

[4] *See* AR 1487-88 (F/F 27, 32), bases for rejecting ABA provider testimony; AR 1490, 1492 (F/F 47, 72), Dr. Vlceck's limited direct knowledge of Student's educational needs, apparent animus toward Defendant; AR 1497, 1499, 1502, 1508 (F/F 105, 117, 138; C/L 25), rationale for "great weight" given to Dr. Prosch-Jensen's testimony; AR 1501-02 (F/F 133-137), examination of expert testimony; AR 1504-05, 1508 (C/L 7-8, 12, 23), insufficiency of ABA providers and Dolan input to discredit District's IEPs; AR 1506 (C/L 15-16), analysis of appropriateness of October 2017 reevaluation;

Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1474-75 (9th Cir. 1993).

Issues on appeal

Parents raise a number of issues on this appeal and via summary judgment; they will be summarized below, then analyzed issue-by-issue in the remainder of the order. Parents claim violations of state and federal law on the part of Defendant for:

1. Failure to provide a FAPE for Student during the 2015-2016, 2016-2017, and 2017-2018 school years;
2. Failure to permit Parents to "fully participate" in Student's education (and thus denying Student a FAPE) during the same period;
3. Failure to provide Student with the necessary aids, services and supports to permit her to appropriately participate in a regular education program during the same period, thus violating the ADA (42 U.S.C. § 12101 *et seq.*) and § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 *et seq.*);
4. Excluding Student from participation in and the benefits of the District's services, programs, and activities on the basis of her disability in violation of the ADA during the same period;
5. Denying Student "nondiscriminatory access" to her education during the same period in violation of the ADA;
6. Failure to provide Student with the necessary aids, services and supports to permit her to appropriately participate in a regular education program during the same period, thus denying her a FAPE and violating § 504 of the Rehabilitation Act;
7. Failure to provide Student with an appropriate education based on her disabilities in violation of the Washington State Constitution Article IX § 1 during the same period;

1. 8. Denial of Student's right to a basic education under the Washington State Constitution in violation of RCW 28A.150 during the same period;

2. 9. Denial of Student's right to an appropriate special education program in violation of RCW 28A.155 and 28A.642 *et seq.* during the same period.

*Failure to provide a FAPE for Student during the 2015-2016, 2016-2017, and 2017-2018 school years*

Parents first challenge the adequacy of the November 2016 IEP, claiming that it failed to include input from Student's Seattle Behavior Consulting and Therapy ("SBCT") group, and failed to consider Dr. Vlceck's recommendation for ABA therapy. The District points out that the Parents did not invite any of the SBCT providers to the November 2016 IEP meeting (but did invite Mr. Miley from Yellow Wood).[5] Furthermore, the ALJ articulated his reasons for finding that none of Student's in-home ABA providers were qualified teachers who educated Student in the home setting (AR 1486-87; F/F 22, 28) and for according less weight to the input from Dr. Vlceck. AR 1497, 1499, 1502, 1508. Nor is it accurate factually to say the ALJ "failed to consider" Dr. Vlceck's testimony; he just did not find it compelling. The Court notes that Parents' briefing consistently conflates "disagreed with/discounted" with "failed to consider."

The requirement that a teacher of the student be present at the IEP was satisfied in November 2016 by the presence of Ms. Kenyon, who had taught Student for five years in elementary school and conducted the weekly in-person assessments of Student, which were all Parents permitted prior to the development of the November 2016 IEP. *See* R.B. v. Napa Valley Unified Sch. Dist., 496 F.3d 932, 939 (9th Cir. 2007); and 20 U.S.C. § 1414(d)(1)(B)(iii). And

---

[5] Defendant also points out that Parents did not challenge the composition of the November 2016 IEP team in the administrative due process hearing. AR 1481-82 (list of issues for hearing). Not having been exhausted below, it is waived as an appellate issue now. 20 U.S.C. § 1415(l); Kutsai v. Las Virgenes Unified Schu. Dist., 494 F.3d 1162, 1170 (9th Cir. 2007).

Parents' allegation that the IEP was not "appropriately ambitious" enough is severely undercut (1) by their failure to articulate in what way it was insufficiently "ambitious," (2) by the testimony of Student's special education teacher Ms. Kenyon that Student would benefit and make progress towards her IEP goals under the MIHS program (AR 1303-04, 1908-20), and (3) by the concession of the Yellow Wood Academy director that the program offered by the District was appropriate to Student's needs and goals and could not be replicated at Yellow Wood. AR 1332, 1953.

As regards their own participation, Parents claim further failures in the November 2016 IEP based on the District's failure to provide them with the raw data from which the periodic progress reports were being generated. The ALJ found this objection to be without merit (AR 1507-08, C/L 21), as does the Court. Other than complaining about the lack of "raw data," Parents (1) provide no evidence of special training, education or experience that would permit them to make use of the information, (2) provide no evidence of how the data might have improved their participation in the process, and (3) cite no case law that they are entitled to it. The law requires "meaningful parental participation" (Vashon Isl., 337 F.3d at 1129), but absent a showing of how an alleged denial "significantly impeded" a parent's ability to participate, there is no IDEA violation. WAC 392-172A-5105(2).

Parents also allege that the November 2016 process "failed to include [them]… at the conclusion as the IEP team made decisions," (Dkt. No. 17, Pltfs' Opening Memo at 15), but they do not elaborate on this allegation. Given that it is undisputed that Parents (1) had a "pre-meeting" with Student's special education teacher at MIHS (Ms. Kenyon; AR 1298-99) and (2) attended the November 2016 IEP meeting, the Court is uncertain in what way they allege they were excluded.

1     The Court concurs with the ALJ's determination that the November 2016 IEP provided

2 Student met the standards for a FAPE.

3     Parents next claim denial of a FAPE in the process that resulted in the October 2017

4 reevaluation. Initially, they allege that the delay beyond the 35-day deadline for completion of

5 an evaluation (WAC 392-172A-03005(3)(a)) was prejudicial. In the first place, the record

6 reflects that the 14-day delay in conducting the evaluation feedback meeting was occasioned by

7 attempts to schedule the personnel that Parents wanted at the meeting, as well as Parents

8 providing additional data to Dr. Prosch-Jensen and requesting a meeting with her and Dr. Breiger

9 before the official evaluation meeting. AR 2218-24, 2380-82, 2383, 2378-79, 2224,1340-43,

10 165, 2271-73, 1990. The IDEA deadlines are not to be given priority over full parental

11 participation. Doug C. v. State of Hawaii Dept. of Educ., 720 F.3d 1038, 1043 (9th Cir. 2013).

12 Furthermore, Parents articulate no specific prejudice (outside of an additional 14-day delay in

13 knowing what the District's final recommendation would be) from the additional time expended.

14 The ALJ concluded that Parents had not established a "significant impediment" to their right to

15 participation (AR 1507, C/L 19); the Court agrees.

16     The second basis for Parents' claim of denial of a FAPE in the October 2017 reevaluation

17 is the District's alleged "ignoring of all the data, conclusions, and recommendations of Dr.

18 Uherek, Dr. Vlceck, and the Student's teachers with her ABA program, Yellow Wood Academy,

19 and Dolan Learning Center." Pltfs' Opening at 22-23. Again, Parents' have conflated

20 "disagreed with/discounted" with "ignored." Defendant points out where Dr. Uherek's IEE was

21 cited as a source of information in the record[6]; the ALJ stated in his Conclusions of Law that

22 "[b]oth the exhibits of record and the testimony of multiple witnesses manifestly refute this

---

[6] AR 904, 906, 909-10, 930, 1383, 1983-87, 1990, 2063, 2065, 2083-85.

argument" and "[t]he report from and opinions of the Parents, Dr. Uherek, Dr. Vlceck, Ms. Kakach, Ms. Funk, Dr. Breiger, Dr. Prosch-Jensen, Dr. Myatich, and Ms. Kenyon have all been reviewed and considered at length by the undersigned and are reflected in the above Findings of Fact." AR 1506, C/L 14-15 (footnote omitted). The Ninth Circuit is clear: a disagreement between the school district and a student's parents over appropriate placement reflects a philosophical difference, "not a denial of opportunity to participate." Vashon Isl., 337 F.3d at 1133.

The final "sub-issue" comprising Parents' denial-of-FAPE allegation concerns the November 2017 IEP (which Parents denote as the "December 2017" in their briefing; the ALJ found that the IEP was developed in November 2017 – see AR 1498; F/F 109, 111, 114). They attack what they see as the lack of appropriate goals based on Student's performance level at that time, a failing they attribute to the District's refusal to properly credit the testimony of her private service providers, the "teachers… who were actually working with the Student." Plaintiffs' Opening Memo at 23. But the ALJ examined the evidence presented by Parents' in-home provider witnesses and determined that it was neither "reliable, compelling or persuasive" based on (1) the lack of adequate professional education, training or experience[7] and (2) his assessment that the activities conducted in-home were not sufficiently related to Student's academic needs to be of value in assessing her current performance levels. AR 1508, C/L 23. It is also noteworthy that neither Parents' arguably qualified rebuttal witness, Janet Dolan, nor Parents objected to either the baselines for Student's annual goals or the IEP itself during the course of the meeting. AR 1210-11, 1352.

---

[7] See AR 273, 278 (Kakach not a teacher); AR 342 (Funk not a teacher); AR597098, 2797-99 (Mott not a teacher); AR 657-58 (Litman not a teacher).

Parents also fault the ALJ for failing to properly credit Dr. Vlceck's medical opinion that Student's seizure disorder dictated an out-of-public-school placement. Dkt. No. 19, Pltfs' Reply at 8, n.2. But the ALJ did consider Dr. Vlceck's testimony (AR 1508, C/L 25), simply giving it less weight than other experts because Vlceck had never observed a school program at MIHS or Student's home (AR 91), had no educational qualifications, and gave inconsistent recommendations throughout the course of Student's IEP process within the District.[8]

The ALJ's rejection of Parents' request for a placement at Dolan was done after having given careful consideration to all the qualified, credible evidence and ultimately deciding to place the greatest weight on the opinion of Dr. Prosch-Jensen, a decision which he fully justified:

> Dr. Prosch-Jensen has years of experience with the Student dating back to elementary school in the District. She had the opportunity to observe the Student across more environments – at the District, Yellow Wood School, Dolan Learning Center, and at home in the SBCT therapy – than any of the other expert witnesses. Her doctorate level ABA certification provides her with a far superior frame of reference to opine on the appropriate use of ABA with the students. The reports she prepared and her testimony at hearing were extraordinarily compelling and persuasive.

AR 1508-09, C/L 25. The ALJ adopted Prosch-Jensen's recommendation, supported by the expert opinions of Dr. Breiger and Dr. Myatich, "that the Student's IEP can be successfully implemented at MIHS." Id.

The Court finds that Parents have not succeeded in carrying their burden of proof by establishing by a preponderance of the evidence that either the District's process or the ALJ's upholding of that process constituted denial of a FAPE for Student.

---

[8] AR 2180 (June 2016 recommendation for Yellow Wood), AR 2203 (September 2016 recommendation for attendance at public school without a nurse), AR 2213 (March 2017 recommendation that neither Yellow Wood nor public school were advisable).

*Failure to permit Parents to "fully participate" in Student's education (and thus denying Student a FAPE) during the same period*

As mentioned above, Parents contend that the failure of the District to provide them with the data from which the progress reports were created resulted in a denial of their meaningful participation in the process. It is neither a substantive nor meritorious argument.

A denial must "significantly impede" a parent's meaningful participation in the process. WAC 392-172A-05105(2); L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 910-11 (9th Cir. 2009). The ALJ considered Parents' objection to not having received the underlying data and found that

> [O]ther than summarily asserting their lack of this raw data prevented them from enjoying meaningful participation, the Parents have not specifically articulated how the lack of any such raw data hindered them. The Parent [*sic*] have not established through evidence of record that they have any particular education, training, or experience that would provide them any special insight, skill or ability to somehow cull meaningful information from any such raw data.

AR 1507, C/L 21. The Court agrees.

Parents attempt to rebut this analysis, claiming that the record reflects "how [Mother] was able to understand [the raw data]." Pltfs' Opening Memo at 26. But the citation to Mother's testimony reveals only that Mother thought the underlying data would reveal "[w]hat she's learning, what she's struggling with, or what she make [*sic*] progress, specifically." AR 124. There is no indication of what skills or training she possessed to interpret the data or how it would have made her participation more meaningful. Tellingly, Parents cite no case law holding that lack of access to the data underlying a student's progress reports equates to denial of meaningful participation.

There is additional argument and contradictory testimony from the District concerning whether Parents actually *did* request the data as they claim (*see* Dkt. No. 20, District's Reply at 8). The Court does not deem it necessary to resolve this factual dispute, choosing instead to rule in Defendant's favor based on the merits of its argument that Plaintiffs have failed to carry their burden of proof in this regard.

*Violations of ADA and § 504 of the Rehabilitation Act (Issues 3 – 6)*

The Court's ruling in support of the ALJ's findings and conclusions – affirming that Parents were not denied meaningful participation in the IEP process and Student was not denied a FAPE by the District's actions and recommendations – basically resolves any question of whether Defendant's actions violated the ADA or § 504 of the Rehabilitation Act. Parents make no response to the District's citation to federal regulations and 9th Circuit case law that a valid educational program under the IDEA sufficiently establishes a FAPE under § 504. 34 C.F.R. § 104.33(b)(2); A.G. v. Paradise Valley Unified Sch. Dist. No. 69, 815 F.3d 1195, 1203-04 (9th Cir. 2016).

Parents do make an additional argument that Student's "exclusion" from general education classes in the public school system constituted discriminatory denial of access on the basis of her disability. They allege that the period of "exclusion" began on February 27, 2016. But the IEP in operation during that period (the April 2016 IEP) was upheld by the ALJ (AR 1503-06, C/L 6-10) and not challenged by Parents on appeal. Parents fail to rebut the District's citation to authority that one way to attain § 504 FAPE compliance is to implement an IEP that accords with the IDEA. Paradise Valley, *supra* at 1203. Furthermore, the evidence indicates that, during the 2015-2016 school year, Student participated in two general education classes and her attendance was as good or better than her attendance at her special education classes. AR

2172-73, 2175-78.  Parents' arguments to the contrary are undercut by Mother's testimony that her daughter's attendance "was frequent enough that I wasn't concerned at the time."  AR 1154.

Parents' "discriminatory exclusion" argument as regards the following school year (2016-2017, the only other school term they make this argument for) is puzzling, given that Student was held out of general education classes by Parents themselves.  This is a classic "unclean hands" scenario – it would be inequitable to grant Parents a ruling that Student had been discriminatorily excluded during the 2016-2017 school year when it was Parents' choice to keep her out of the public school environment.

There is some further argument related to damages which involves whether or not the District acted with *intent* or *deliberate indifference* to discriminate against Student.  Based on the Court's finding that Defendant did not act in violation of the ADA or § 504 of the Rehabilitation Act in any regard, the issue of damages is moot.

*Violation of Student's right to education under Washington Constitution and statutes*

Parents cite to Article IX § 1 of the Washington Constitution, under which "all children residing within the borders of the State possess a 'right,' arising from the constitutionally imposed 'duty' of the State, to have the State make ample provision for their education." McCleary v. State, 173 Wn.2d 477, 518 (2012).  Those rights are codified into state law under RCW 28A.150 *et seq*.

There are two deficiencies in this argument.  First, the Court's finding that the District's actions provided Student with a FAPE defeats any notion that the District has not "amply provided" for her education.

Second, there is case authority that the Washington Constitution does not provide a cause of action against school districts.  The Washington Supreme Court has held that "the school

districts have no duty under Washington's constitution. Article IX makes no reference whatsoever to school districts." Tunstall v. Bergeson, 141 Wn.2d 201, 232 (2000). If the school districts have no constitutional duty, then there is no basis under the Washington Constitution to hold them liable.

Tunstall has never been overturned, and Parents cite no other cases where a constitutional duty has been imposed upon a school district under these circumstances. Plaintiffs attempt to cite a later state court of appeals case (Porter v. Seattle Sch. Dist., 160 Wn.App 872 (2011)) in support of their position, but to no avail. Not only does the case cite Tunstall ("[A]rticle 9, by its express language, places a duty only on the State, not on school districts."), but the language Plaintiffs attempt to cite in their favor ("[A]rticle 9 would support a remedy if it were shown that de facto segregation is depriving children of necessary educational opportunities.") is completely distinguishable from the facts of this case.

The allusion in Porter to "de facto segregation" refers to a system-wide condition, the result of widespread practices or policies affecting a group or class of individuals. Parents make no attempt to prove that the "discrimination" they allege against their daughter is a systemic or otherwise endemic practice in the District, thus their analogy fails. The only other case cited by Parents in support of their constitutional argument is another "de facto segregation" case which simply states that "article IX imposes upon *the State* the paramount duty to provide an ample, general, and uniform basic education to all children." Parents Involved in Community Schools v. Seattle Sch. Dist. No. 1, 149 Wn.2d 660, 682 (2003)(emphasis supplied).

Parents have not carried their burden of proving that the state constitutional or statutory duties concerning education are available as causes of action against a school district. Defendant is entitled to a summary judgment of dismissal regarding these claims.

## **Conclusion**

Parents have not carried their burden of establishing by a preponderance of the evidence that the ALJ's determination upholding the District's decision was made in error, thus their appeal will be denied. The Court finds that there are no genuine disputes of material fact and that Defendant is entitled, as a matter of law, to summary judgment of dismissal as regards Parents' claims under the ADA, § 504 of the Rehabilitation Act, the Washington Constitution and the Revised Code of Washington.

The clerk is ordered to provide copies of this order to all counsel.

Dated March 17, 2020.

Marsha J. Pechman
United States Senior District Judge